AMERICAN FREEHOLD LAND MORTGAGE COMPANY OF
LONDON, LIMITED, *v.* WOOD.

Opinion delivered November 10, 1919.

PRINCIPAL AND AGENT—AUTHORITY TO NEGOTIATE AND TO COLLECT
LOANS.—While the authority to negotiate loans raises no presumption of authority to collect such loans without possession of the securities, yet where the custom of the parties has been such as to lead others to believe that the agent had such authority, a payment to the said agent, without a surrender of the securities, will be deemed a payment to the principal.

Appeal from Lincoln Chancery Court; *John M. Elliott,* Chancellor; affirmed.

*Charles T. Coleman,* for appellant.

1. Payment to an agent who neither has the note nor is authorized to collect the note, does not bind the principal unless the money actually reaches him. Payment to an agent who does not hold the securities for collection is at the risk of the payer. 54 Ga. 52; 60 *Id.* 90; Mechem on Agency (2 Ed.), § § 937-940; Story on Agency, § 98; 75 Minn. 316; Smith's Merc. Law, p. 68; 31 Cyc. 1370. One who pays a note to another to protect himself must see to it that when he pays the money he receives the note. 105 Ark. 152-157; *Taylor* v. *Oliver,* 137 Ark. 515.

2. Authority to collect interest does not raise the presumption of authority to collect the principal where the notes and securities are not entrusted to the collection of the agent. 105 Ark. 152; *Taylor* v. *Oliver,* 137 Ark. 515, 8 S. W. 595.

3. The money paid Rose never reached the company. He did not have possession of the notes at the time of payment and had no authority to collect the notes, and the payment was at the risk of the payer. Cases *supra;* 105 Ark. 152. The Freehold Company never received the money, and there was no ratification by it by accepting the money, as the transcript of Rose's account with the Worthen Company Bank shows. The evidence utterly fails to show that the money collected from Wood with-

out authority ever actually reached the hands of the
Freehold Company.

4. The funds, if trust funds as claimed at all, were
never so impressed as "trust funds" for the defendant.
232 Fed. 847; 157 *Id.* 49; 236 *Id.* 909; 222 U. S. 707; 99
Ark. 553-557; 104 Ark. 550-560.

5. Payments out of a trust fund to innocent parties
can not be recovered. 92 Fed. 745; 131 Mass. 397; 17
Mass. 563; 56 N. Y. 187; 180 U. S. 284; 78 N. W. 238;
79 N. Y. 183; 114 U. S. 401; 180 *Id.* 284; 107 Ark. 232.

6. Rose had no actual authority to collect the notes
and the collection was not within the apparent scope of
his authority. Cases *supra.*

*Mehaffy, Reid, Donham & Mehaffy,* for Deming In-
vestment Company.

1. Under the contract between appellant and Rose,
the latter had express authority to collect the principal
and, second, the money actually reached the principal, as
shown by the evidence. 2 C. J. 420. Rose was acting for
the Freehold Company under his contract with it. He
had the notes in his possession duly endorsed to him and
the chancellor so found, and the finding is sustained by
the evidence.

2. The testimony shows conclusively that every dol-
lar of the money received from the Deming Investment
Company was paid to appellant.

3. Under the contract Rose had authority to collect
both principal and interest and the principal is bound
whether Rose had the notes or not, and he had them, but
appellant failed to ask for them when the payment was
made, and the principal is bound; the payment to him
was within the actual or apparent scope of his authority.
74 S. W. 72; 90 N. W. 646; 89 *Id.* 264; 88 *Id.* 653; Hoff-
cutt on Agency (2 Ed.) 65; Bigelow on Estoppel (5 Ed.)
565; 110 U. S. 7; 122 *Id.* 457. See also 64 N. W. 1100; 50
L. R. A. (N. S.) 663; 75 Col. 159; 16 Pac. 762; 65 Neb.
632; 91 N. W. 540; 65 N. E. 36; 182 Mass. 177; 68 N. W.
1055; 70 *Id.* 938; 45 *Id.* 415; 72 N. Y. 87; 89 N. W. Rep.

169-171; 77 *Id.* 1087; 76 *Id.* 213-215; 90 *Id.* 233; 64 *Id.* 1058; 95 *Id.* 615; 43 *Id.* 975; 57 Atl. 409; 170 Mass. 337; 49 N. E. 651; 152 N. W. 668; 46 S. W. 615.

4. Ratification by the appellant was shown by the acts of the company. 1 Parson's Esq. Cases 180; 13 Ky. Law Rep. 969; 22 N. W. 276; 37 S. E. 670. The proof abundantly shows that the acts of Rose were within the apparent, at least, scope of his authority and plaintiff is bound. Cases *supra.*

5. Where one of wo innocent parties must suffer, the one whose negligence or mistake made the mistake possible must bear the loss. 158 Pac. 976; 165 *Id.* 82; 122 *Id.* 623.

SMITH, J. In 1909 appellee, Fred A. Wood, became indebted to The American Freehold Land Mortgage Company of London, Limited, hereinafter referred to as the mortgage company, in the sum of $6,200, evidenced by ten principal notes and a like number of interest notes, one principal note and one interest note being payable on the first day of November from 1909 to 1918, and secured by a deed of trust on lands owned by appellee. Appellee paid the interest up to the first day of November, 1914, and paid $415.35 on the principal, and on May 5, 1915, owed a balance of $6,494.95. At that time Wood negotiated a loan from the Deming Investment Company of eight thousand dollars for the purpose of paying the debt due the mortgage company and two other debts which were secured by mortgage liens on his lands, and the investment company sent to J. D. Arnold, its local agent at Little Rock, a draft payable to J. M. Rose, the Arkansas representative of the mortgage company, for the amount due the mortgage company. Arnold's instructions were to deliver the draft to Rose on the surrender of the canceled notes held by the mortgage company and the delivery of a duly executed release of the mortgage. Arnold delivered the draft to Rose without taking up the notes, but he did receive from Rose what purported to be a valid release of the mortgage. This release was properly executed by the duly author-

ized officers of the mortgage company, but it is said that, as originally executed, it related to another mortgage and that it had been changed after its transmission to Rose to describe appellee's mortgage. Rose deposited the draft with a local bank to the credit of his individual account (all funds collected by him for the mortgage company were thus deposited) and thereafter made various remittances of this money and other collections for the benefit of the mortgage company to a bank in New York City as his contract with the mortgage company required him to do. The letters accompanying these remittances gave directions for the application of the payments so remitted, but in none of these letters was the mortgage company advised to give credit on appellee's mortgage. Rose died, and a representative of the company took charge of his affairs and his papers, and upon an audit of his books he was found to be largely indebted to the mortgage company.

Suit was brought to foreclose appellee's mortgage; and in the answer and cross-complaint which was filed payment was alleged and the cancellation of the mortgage was prayed.

Rose's agency contract was offered in evidence, and the court below held that, by its terms, express authority was conferred on Rose to collect the sum due on appellee's mortgage, and the court canceled the mortgage as having been paid, and the company has prosecuted this appeal.

Appellee insists, for the affirmance of the judgment, first, that the court properly construed the agency contract; second, that appellee's money actually reached the company and the debt was thereby paid; and, third, that, if Rose did not have actual authority to make the collection, that action was within the apparent scope of his authority.

Of the second ground it may be said that a very plausible argument is made to support it. But we think it sounder to say that in receiving appellee's money Rose was acting within the apparent scope of his authority.

The agency contract is a lengthy one and covers many matters of detail, and we do not, therefore, set it out, but the fourth paragraph—on which the decision of the court below was based—reads as follows:

"The agent hereby undertakes to carry on the business contemplated by this agreement, viz.: ·The making of mortgages for and on behalf of the company, collecting of principal, interest and charges, etc., and doing all the work incidental to the conduct of the mortgage business in an efficient and business-like manner, and also to do and perform all reasonable things and to render all reasonable things and to render all reasonable services conducive, incidental, or essential thereto, and to the adequate protection of the company's interest in all respects."

Another paragraph designates the agency as a special agency and recites that Rose is to have no other or different power or authority, either expressed or implied, than is defined and limited by the contract.

A study of these paragraphs in connection with the remainder of the contract leaves us in doubt whether the court below was correct in the construction given it; but, when it is read in the light of the testimony in the case, and the contract and that testimony are considered together, we think the receipt of appellee's money by Rose was within the apparent scope of Rose's authority, and the company was, therefore, as completely bound as if express authority had been conferred.

This testimony may be summarized as follows: Rose became the company's agent in 1898 for the State of Arkansas, and thereafter made a great many loans and acted for the company in an infinite number of transactions between the company and the borrowers growing out of these loans. The applications for the loans were made to Rose, and these applications with the abstracts of the title to the lands offered as security for the loans were delivered to Rose and forwarded by him to the company, and when the loans had been approved the deeds of trust

were written by Rose on blank forms bearing his name as agent and thereafter the borrower dealt with no one but Rose upon all questions of extension of time, of payment of either principal or interest, or of cancellation of the deeds of trust after payment had been made. It was the custom of the company to send releases to Rose, who delivered them to the borrowers upon the payment of their loans. The release which Rose was said to have altered was sent to him in this manner by the company, according to the testimony in its behalf, for the purpose of releasing a different loan.

The agency contract does not recite that Rose had authority to collect notes which had not been sent him for collection, but it contained no denial of that authority, and it is undisputed that he collected a great many notes, both for principal and interest, for the company. It is said, however, that in each case where that authority existed the notes had been sent to Rose for collection.

It was shown, however, that Rose had in his possession at all times a large number of the company's notes, each of which contained the following endorsement:

"To John M. Rose for collection and cancellation on our account.

(Signed) "The American Land & Mortgage Company of London, Limited,

"By W. B. Smith, Secretary."

Notes were sent to Rose for collection from sixty to ninety days before their maturity, and he had in his possession at all times for collection a large number of the company's loan notes. Indeed, at the time Arnold delivered the draft for the amount of appellee's mortgage Rose had in his possession appellee's notes due in the years 1909, 1910, 1911, 1912, 1913 and 1914, and the authority to collect those notes is conceded, but Rose did not then have in his possession the notes which had not matured. It thus appears that appellee had obtained much indulgence in the matter of extension of time and these extensions were granted to appellee, as were similar extensions to other borrowers, by Rose.

The mortgage company invokes the doctrine of the case of *Taylor* v. *Oliver,* 137 Ark. 515, and of other cases there cited, to the effect that authority to negotiate loans raises no presumption of authority to collect such loans without possession of the securities, and counsel quotes from that case the following statement of the law:

"The doctrine of those cases is conclusive of this. Rose did not have the notes for collection at the time the payments were made; and we think the testimony does not show that Mrs. Taylor was guilty of any conduct which warranted Oliver in assuming that Rose had the authority to make these collections. The testimony is conflicting as to whether Rose was the agent of Mrs. Taylor, or of Oliver, in negotiating the loan; but, if it be assumed that Rose was the agent of Mrs. Taylor in this respect, it does not follow that he was also her agent for the purpose of receiving money in payment of this loan. Upon the contrary, the law is that authority to negotiate loans raises no presumption of authority to collect such loans without possession of the securities. The note to *Campbell v. Gowans,* 23 L. R. A. (N. S.), 414, cites many cases to that effect."

It will be observed, however, that we there said that "we think the testimony does not show that Mrs. Taylor (the mortgagee) was guilty of any conduct which warranted Oliver (the mortgagor) in assuming that Rose had the authority to make these collections."

And just here the instant case is distinguishable from that case. We think the testimony set out above would have warranted a person of ordinary prudence and acquaintance with business usages—such as the testimony shows Arnold to have been—to believe, as Arnold did believe, that Rose had full authority in all matters relating to the extension and collection of these notes and the satisfaction of the deeds of trust securing them; and, that being true, payment to such an agent must be deemed payment to the principal. Bigelow on Estoppel (6 Ed.), 612, 613; *Martin* v. *Webb,* 110 U. S. 7; *Travelers' Ins. Co.* v. *Edwards,* 122 U. S. 457; *Johnson* v. *Milwaukee & Wyo.*

*Inv. Co.*, 46 Neb. 480, 64 N. W. 1100; *Dispatch Ptg. Co.* v. *Nat. Bank of Commerce*, 109 Minn. 440, 124 N. W. 236, 50 L. R. A. (N. S.), 663; *Quinn* v. *Dresbach*, 75 Cal. 159, 16 Pac. 762; *Harrison Nat. Bank* v. *Austin*, 65 Neb. 632, 91 N. W. 540; *Fitzgerald* v. *Beckwith*, 182 Mass. 177, 65 N. E. 36; *Thompson* v. *Shelton*, 49 Neb. 644, 68 N. W. 1055; *Hare* v. *Bailey*, 73 Minn. 409, 76 N. W. 213.

The decree of the court below adjudging that appellee's deed of trust had been paid and canceling it on that account is therefore affirmed.