HARRIS HYMAN & COMPANY, INC., v. CHOCTAW COTTON OIL COMPANY.

Opinion delivered June 17, 1929.

*Hardin & Barton,* for appellant.
*Hill, Fitzhugh & Brizzolara,* for appellee.

HUMPHREYS, J. Separate suits were instituted in the circuit court of Sebastian County, Fort Smith District, by appellant against the several appellees for short-

age in weight of certain lists of cotton purchased by it from each.

The several appellees answered, admitting the correctness of the account sued upon, but alleging payment of the several claims by checks drawn in favor of appellant and delivered to W. F. Kelley, who indorsed same as its agent and collected them from the banks upon which they were drawn.

One of the appellees, Choctaw Cotton Oil Company, also filed a cross-complaint against appellant for $292.69 for overweights on certain lists of cotton it sold to appellant.

The several suits were transferred to the chancery court of said district and county, and there consolidated and tried, with the result that appellant's several suits were dismissed, and a decree rendered in favor of the cross-complainant, Choctaw Cotton Oil Company, for $292.69, from which is this appeal.

Appellant was a Maryland corporation, with its principal office in New Orleans, where it did an export cotton brokerage business. It employed J. McD.Dufilho, an independent cotton broker, to buy cotton for it in different sections of the South and West, agreeing to pay him 50 cents a bale as commission for his services. He in turn employed W. F. Kelley, who temporarily took up his residence at Fort Smith, Arkansas, to buy cotton at that point for appellant from the appellees herein, under agreement that the sellers of the cotton, appellees herein, should ship same directly to appellant at New Orleans, on bills of lading with draft for the purchase price attached, based upon the gin weights, with the understanding that the cotton would be re-weighed at the compress, and final adjustment and settlement made upon the basis of the compress weights. Kelley had an assistant by the name of Brown, who did his clerical work, but Kelley himself bought all the cotton for appellant from each of the appellees, receipted for same in its name by himself, confirmed the sales in its name by himself,

directed the shipment of each lot of cotton so purchased, and frequently prepared the drafts on appellant for the purchase price. A great deal of cotton was purchased this way by Kelley for appellant during the fall of 1924, and, when each shipment arrived at the compress and was weighed, the manager of the compress sent out two statements of the weights, one to appellant and the other to the seller. During the cotton season, as soon as appellant received the compress weights, a memorandum was made up by it, showing the overage or shortage in weights, which was delivered by Kelley to the several appellees. These memoranda had a notation on them that it was cotton purchased by Dufilho and Kelley. They were filed away by the several appellees for reference when there should be a final adjustment or settlement between appellant and the several appellees at the close of the cotton season. These memoranda covering each shipment were called credit and debit sheets, and were made out on the stationery of appellant. At or near the close of the season an itemized account, covering all discrepancies between the gin and compress weights, made up on the stationery of appellant, was presented by Kelley to each of the appellees, showing the balance due by each to appellant. Upon the presentation of these final itemized credit and debit sheets, each of the appellees issued and delivered to Kelley a check for the amount each owed, payable to appellant or its order. Kelley indorsed the name of appellant, by himself as its agent, on the several checks, cashed them, and absconded with the proceeds.

On October 21, 1924, during the time Kelley was purchasing cotton from the several appellees for appellant, one of them, Choctaw Cotton Oil Company, wrote a letter to appellant, which is as follows:

"October 21, 1924.

"Harris Hyman Co., New Orleans, La.

"Gentlemen: Find inclosed invoices covering our sales to you up to this date. Owing to a slight misunder-

standing as to the requirements of your firm in the matter of these, we have heretofore sent no invoices with draft, but have submitted them to Mr. Kelley, your representative here. He advises that we are to furnish you as well as him with copies, and in the future we will see that this is done.

"Yours very truly,

"Choctaw Cotton Oil Company,

"By............................."

The officers of appellant who testified in the case did not deny receiving this letter. It seems that the letter was written in response to information which the Choctaw Cotton Oil Company had received from appellant. The testimony introduced by appellant was, in substance, to the effect that appellant had no dealings whatever with Kelley, and that Kelley was not its agent, but was merely an employee of J. McD. Dufilho. They testified that they did not know nor had ever heard of Kelley until after he had cashed the checks. They also testified that the cotton was purchased by J. McD. Dufilho, and that even he had no authority to collect the amounts from the several appellees on account of a discrepancy between the gin and the compress weights.

Appellant's contention for a reversal of the decree is that, according to the weight of the testimony, Kelley did not represent it, and that the delivery of the checks to him, although made payable to appellant, and although cashed and charged to the account of the several appellees, was not a payment of the several accounts sued on.

According to the undisputed testimony, Kelley purchased all the cotton from the several appellees for appellant, receipted for same, directed the shipment thereof, and subsequently confirmed the sales; also delivered to appellees the credit and debit memoranda sheets, showing the amount due on account of the discrepancy between the gin and compress weights; also presented a final itemized account of the amount due appellant on account of the discrepancy in the gin and compress

weights, and received a check from each appellee for the amount shown to be due on this account from each to appellant. The only reasonable inference from the testimony is that these credit and debit sheets were made up in the office of appellant on its own stationery and mailed to Kelley. There was no way for Kelley to have got them except from appellant, as appellant had the only information or data upon which they could have been made. The denial of the officers that they had ever heard of Kelley until after he cashed the checks cannot be accepted as true, as the various credit and debit sheets and the final itemized credit and debit sheets showed on their face that they represented discrepancies between gin and compress weights of cotton which had been purchased by J. McD. Dufilho and Kelley. Appellant's officers must have known that Kelley was its only representative at Fort Smith, as they well knew that J. McD. Dufilho resided in and had his office in New Orleans. The letter which the Choctaw Cotton Oil Company wrote to appellant on October 21, 1924, apprised it of the fact that Kelley was its representative at Fort Smith by telling it that the invoices with draft attached had always been submitted to him before being forwarded for collection. Appellant is clearly estopped from denying that Kelley was its agent for the purpose of purchasing and directing the shipment of the cotton to it. The only reasonable conclusion from the testimony is that Kelley had express or actual authority to purchase for and direct the shipment of the cotton to appellant. It is true that the record does not reflect express authority in Kelley to present the credit and debit sheets and receive checks in payment of the several accounts due appellant from the several appellees. Such authority must necessarily be implied from the fact that they sent these sheets to Kelley for some purpose. The only reasonable purpose for sending them to him was for collection. He certainly had apparent authority to present them and receive checks for the several amounts due appellant from

the several appellees. This court said in the case of *Ozark Mutual Life Association* v. *Dillard,* 169 Ark. 136, 273 S. W. 378, that:

"Apparent authority in an agent is such authority as the principal knowingly permits the agent to assume, or which he holds the agent out as possessing; such authority as he appears to have by reason of the actual authority which he has; such authority as a reasonably prudent man, using diligence and discretion, in view of the principal's conduct, would naturally suppose the agent to possess."

It may be that Kelley had no actual or express authority to indorse the name of appellant and collect the checks, but he certainly had apparent authority to receive them. If he wrongfully indorsed and cashed the checks, it became a question between appellant and the banks cashing them or between appellant and its agent, Kelley, and not between appellant and appellees. Appellees were justified, as reasonably prudent parties, in view of the dealings between themselves and appellant through Kelley, and in view of Kelley's presentation to them of the itemized credit and debit sheets, in assuming that Kelley had authority to receive checks in payment of appellant's accounts.

No error appearing, the decree is affirmed.