POLLARD *v.* FOWLER.

4-4798

Opinion delivered November 8, 1937.

*Vol T. Lindsey,* for appellant.
*Clyde T. Ellis,* for appellees.

SMITH, J. This suit was filed in the Benton chancery court September 29, 1933, by Arthur B. Pollard against George L. Fowler and wife and N. M. Chinn and his wife, praying judgment on a note executed by George L. Fowler to the Inter-State Mortgage Trust Company on February 19, 1926, for the sum of $1,600, due February 1, 1933, bearing interest at 6 per cent. To secure the payment of this note a mortgage was executed by Fowler on a farm which he then owned in Benton county. At-

tached to the original note were 14 interest coupons, one in the sum of $44 and the other thirteen for $48 each, representing semi-annual interest due on the note as the coupons matured.

The complaint alleged the assignment to plaintiff of the note and mortgage on March 1, 1926, and that all interest had been paid thereon to February 1, 1932; one-half of the interest due August 1, 1932, and one-half the interest due February 1, 1933, and that no other payments had been made except the interest maturing prior to those dates. The mortgage was made an exhibit to the complaint, and showed that all the interest coupons had been detached except the one due in August, 1932, and another in February, 1933. It was alleged that the mortgage company became insolvent and was placed in bankruptcy in 1931, and that the trustee in bankruptcy had made a formal assignment of the mortgage to Pollard May 20, 1931. It was then—and not before—that the assignment was noted of record.

Fowler and wife made default, and filed no answer, but the defendants Chinn and his wife answered that they had purchased the mortgaged property from their co-defendant, Fowler, under an assumption of payment of the notes secured by the mortgage, and that they had paid the mortgage company, as plaintiff's agent, all interest as it matured, together with $800 of the principal, and made tender of payment of the balance due. They also alleged tender of payment prior to the institution of the suit. The mortgage provided that any multiple of a hundred dollars might be paid on the principal at any interest-paying period, and they alleged such a payment in the sum of $800 had been made in August, 1928, to the mortgage company.

The court made a finding supporting the allegations of the answer and rendered a decree foreclosing the mortgage for the balance adjudged to be due, from which decree plaintiff has prosecuted this appeal.

The mortgage company's principal place of business was in Greenfield, Massachusetts, and its loans secured by mortgages, as in the instant case, were payable there. It operated a western branch office in Parsons, Kansas,

and maintained a local office at Rogers, in Benton county, in charge of E. W. Dawkins, whose duties were to collect and remit payments both of principal and of interest. He had certain other duties such as seeing that insurance was maintained on mortgaged property where this was required by the mortgages. This agency of Dawkins continued until the mortgage company became a bankrupt.

All payments made by Chinn were made to Dawkins prior to the bankruptcy proceedings, after which they were made to the trustee in bankruptcy, and it is undisputed that when he paid the $48 interest due in August, 1928, he also paid $800 on the principal. This money was remitted to the mortgage company, and in due course Chinn received the mortgage company's receipt therefor.

Pollard was first advised of this payment in 1931, and on October 20th of that year wrote Chinn a letter, in which he stated that he had advised with his attorney, who would take the matter up with some attorney in this state, and that he would make Chinn a visit. The visit was made, and other correspondence was had between Pollard and Chinn. Pollard wrote Chinn in 1933 that he would accept a new mortgage and note for $800 if Chinn would have them properly made out and mailed to him. A new note and mortgage were prepared and mailed to and received by Pollard. The sufficiency of the new note and mortgage does not appear to have been questioned. Pollard did not record this mortgage, neither did he return it or the note. He testified, however, that he claimed no rights under either, and did not know what had become of them. Pollard bought other notes and mortgages from the mortgage company amounting altogether to about seven or eight thousand dollars. His practice was to deposit money with the mortgage company in multiples of $500, and when the company had notes to sell for the amount of his deposit, notes would be sent him and the mortgages securing them also if his purchase covered the entire indebtedness secured by a mortgage. He purchased the Fowler note and mortgage in this manner March 1, 1926, and both were delivered to him and remained in his exclusive possession until this suit was

filed, although the mortgage was not formally assigned until May 20, 1931, and that assignment was made by the trustee in bankruptcy of the mortgage company on that day, of which proceeding more will be presently said.

The assignment was never noted on the margin of the record where the mortgage was recorded until the date stated, and when Chinn purchased the land in 1928 the examination of the title then made did not disclose that the mortgage company was not the owner of the note. Of course, being negotiable, Chinn was charged with notice that it might have been sold. But after his purchase of the land Chinn was advised by the mortgage company to make the payments in the manner in which they were made. The payments were thereafter made as above stated, and properly receipted for. Chinn did not take up the note when he made the eight-hundred-dollar payment. He was not entitled to do so, as he had paid only one-half of the note. It is especially significant that after this eight-hundred-dollar payment on principal was made in August, 1928, the semi-annual interest payments were reduced to $24, and upon the remittance of that amount Chinn was sent the interest coupon then due for $48 prior to the bankruptcy proceeding. Pollard testified that when the $48 coupons matured they were forwarded to the office of the mortgage company where they were payable, and the company would send checks to cover. These remittances were always promptly made until in 1930, when the mortgage company became "slack," as Pollard expressed it, in making remittance.

During one of Pollard's visits to Benton county he agreed one day—and declined the next—to receive $800 in payment of the balance due on the note.

When the mortgage company was adjudged a bankrupt Pollard attended the creditors' meeting, and he later filed the mortgage and a claim for the $800 payment for allowance in that proceeding. These he later withdrew, the mortgage being then assigned him, but a first and final dividend of 4¾ per cent. was declared in favor of creditors, and a payment of that per cent. on the mortgage amounts to $38. This sum was paid Pollard, but he attempts the explanation that he supposed the payment

was on a certificate of deposit of money for the purchase of other mortgages which had never been delivered to him. He received another check, which apparently covered that item. Only the grossest inattention could have led to this misapprehension. His explanation of his withdrawal was that the note had been assigned to him without recourse. It is suggested that the $38 payment should now be disposed of by allowing credit for it. Whatever else may be said of this demand and of the action of Pollard in filing his claim in the bankruptcy proceeding, it is certainly a strong circumstance tending to show that Pollard recognized the mortgage company as his agent in receiving this payment from Chinn, otherwise there was no authority for filing the claim.

For the reversal of the decree herein, appellant cites numerous decisions of this court to the effect that one makes, at his own peril, any payment of either principal or interest upon his negotiable note to a person not then in possession of it, as he is charged with knowledge that another person may be the owner thereof, and that mere authority of an agent to collect interest does not imply authority to collect the principal, and especially so when the principal is not then due. It is the duty of the maker of a note to see that the person to whom he pays is in possession of it. We reaffirm these holdings, but they do not govern here. There are other legal principles which must be applied.

In his excellent work on Arkansas mortgages, Judge HUGHES says, at page 239: "But, though the agent have not the securities, his authority may be inferred from the course of business and the conduct of the parties. If that conduct has been such as to lead the mortgagor to believe that the agent had authority to receive payment, a payment to him will discharge the mortgage," citing *American Freehold Land Mortgage Co.* v. *Wood,* 140 Ark. 452, 215 S. W. 696.

At page 221 of the chapter on Agency in 3 C. J. S., it is said: "Payment to a known agent is binding on the holder (of a promissory note) if the agent had express, implied, or apparent authority to collect and discharge

the instrument, notwithstanding the agent does not have possession of the instrument.''

At page 1063 of the same chapter in 2 C. J. S., it is said: ''Where a person, by acts or conduct, has knowingly caused or permitted another to appear as his agent, to the injury of third persons who have dealt with the apparent agent in good faith and in the exercise of reasonable prudence, he will be estopped to deny the agency.'' Among the cases cited in support of the text last quoted is our own case of *Harris Hyman Co.* v. *Choctaw Cotton Oil Co.,* 179 Ark. 780, 19 S. W. (2d) 1100. We there said, quoting from the case of *Ozark Mutual Life Ass'n* v. *Dillard,* 169 Ark. 136, 273 S. W. 378, that '' 'Apparent authority in an agent is such authority as the principal knowingly permits the agent to assume, or which he holds the agent out as possessing; such authority as he appears to have by reason of the actual authority which he has; such authority as a reasonably prudent man, using diligence and discretion, in view of the principal's conduct, would naturally suppose the agent to possess.' ''

Here, over a period of years Pollard let the payee named in a note collect at the place of payment remittances of interest, knowing, as the mortgage in his possession would have disclosed, that the agent had the same authority to collect, in multiples of a hundred dollars, the principal on any interest-paying date, that he had to collect the interest itself. He knew that these interest payments were being made to the payee named in the note while the mortgage which secured it was owned, so far as the public record disclosed to the contrary, by the payee. These circumstances, reinforced by the fact that Pollard filed claim for the $800 paid by Chinn to the mortgage company in the bankruptcy proceeding against that company and accepted and retained a new note and mortgage covering the $800 payment, compels the conclusion that if the mortgage company was not in fact Pollard's agent, he had clothed it with that apparent authority, and it would now be inequitable to hear his denial that the mortgage company was his agent. For these reasons the decree must be affirmed, and it is so ordered.